# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

IN RE:

JOHN D. MCLAUGHLIN,
SHARON K. MCLAUGHLIN,

Debtors.

) CHAPTER 7
)
) CASE NO. 05-63927
)
) JUDGE RUSS KENDIG
)
) **MEMORANDUM OPINION AND**
) **NOTICE OF INTENT TO RULE**
) **(NOT INTENDED FOR**
)   **PUBLICATION)**

This matter comes before the court upon the Application of Anthony DeGirolamo, chapter 7 trustee (hereinafter "Trustee"), for Compensation and the Final Report and Account of Trustee. The Application for Compensation and Final Report and Account of Trustee were filed simultaneously on August 22, 2006.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157, and the general order of reference entered in this district on July 16, 1984. This is a core proceeding over which the court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(B). Venue in this district and division is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTS

John D. McLaughlin and Sharon K. McLaughlin (hereafter "Debtors") filed a chapter 7 petition on July 9, 2005. After a meeting of creditors on August 18, 2005, Trustee determined that there were assets in the estate available for distribution to creditors from a life insurance distribution. Sharon McLaughlin was the beneficiary on her ex-husband's policy. On October 31, 2005, Trustee filed a request for notice to creditors to file claims due to the recovery of assets. This notice to creditors was issued by the court. The notice stated assets had been recovered and further instructed creditors to file a proof of claim by February 1, 2006 if they desired to share in the distribution of funds. Two claims were filed by the claims bar date of

1

February 1, 2006. The Internal Revenue Service filed a claim for $750.50 on December 9, 2005 and Citibank filed a claim of $553.96 on January 2, 2006.

Nine claims were not filed by creditors. Rather, Trustee filed the claims in the name of various creditors on March 1, 2006. Trustee filed claims on behalf of all unsecured creditors except for creditor CitiBank U.S.A. (scheduled as "Sears" credit card), who filed their own claim. Because eCast Settlement Corporation filed their claims *after* Trustee had filed claims on their behalf, Trustee deemed them duplicate claims in his final report. Each claim filed by Trustee consists of a one page document without any supporting documentation. The section entitled "Basis for Claim" is blank in each Trustee-filed claim, as is the section entitled "Date debt was incurred." The total amount of each claim matches the amount listed on Debtors' schedules.[1] Trustee proposes to distribute 100% to the unsecured creditors and return the surplus to Debtors.

## DISCUSSION

Generally, it is the creditor who must file a proof of claim. 11 U.S.C. § 501(a). However, section 501(c) states that "if a creditor does not timely file a proof of such creditor's claim, the debtor or trustee may file a proof of such claim." 11 U.S.C. § 501(c). Rule 3004 provides the time frame and requirements for a trustee to file a claim. Fed. R. Bankr. P. 3004. House and Senate Judiciary Committee reports accompanying section 501 provide that the rationale underlying allowing trustees to file claims is

> mainly to protect the debtor if the creditor's claim is nondischargeable. If the creditor does not file, there would be no distribution on the claim, and the debtor would have a greater debt to repay after the case is closed than if the claim were paid in part or in full in the case or under the plan.

H.R. Rep. No. 95-595, at 352 (1977); S. Rep. No. 95-989, at 61 (1978). While a trustee can certainly file claims to comport with this rationale, it is not clear whether a trustee can file a claim utilizing numbers directly from a debtor's schedules adopted without additional documentation, when the debt would otherwise be dischargeable.

Other courts reaching this issue do not favor allowing trustees to file proofs of claim for dischargeable debts. See Drew v. Royal (In re Drew), 256 B.R. 799 (B.A.P. 10th Cir. 2001); In re Thomas, 2005 Bankr. LEXIS 2033 (Bankr. E.D. Va. 2005) (unpublished); In re Nettles, 251 B.R. 899 (Bankr. M.D. Fla. 2000); In re Mustelier, 65 B.R. 59 (Bankr. S.D. Fla. 1986). In reaching this conclusion, courts emphasize section 501, stating that the intent behind the implementation

---

[1] Trustee filed the following claims, with each amount matching the totals listed on Schedule F of Debtors' petition: BP Amoco - $845.00; Capital One - $8,476.00; Direct Merchants Bank - $3,200.00; Household Bank - $440.00; Merrick Bank - $850.00; Orchard Bank - $1,462.00; Providian - $8,688.00; and Radiology Associates - $24.98.

2

of section 501 was not for a trustee to file claims on behalf of all creditors listed in a debtor's schedules. In re Drew, 256 B.R. at 805.

Another inherent problem in allowing trustees to file claims based solely upon a debtor's schedules is that the trustee lacks actual knowledge of the validity and accuracy of the claims. Id. The lack of reasonable investigation into the claims puts the validity and accuracy of such claims into question. In re Thomas, 2005 Bankr. LEXIS at *14.

Simply because a debtor has a duty pursuant to 11 U.S.C. § 521 to file a list of creditors does not signify that a trustee can file claims on behalf of creditors and assume that a debtor's verified schedules are prima facie evidence of valid claims. The court concurs with the analysis provided by the Tenth Circuit Bankruptcy Appellate Panel in Drew v. Royal (In re Drew), 256 B.R. 799, 805 (B.A.P. 10th Cir. 2001). In their analysis, the court notes the distinction between prima facie evidence of claims in chapter 9 or chapter 11 cases, as opposed to chapter 7 cases. Id. The Federal Rules of Bankruptcy Procedure specifically permit schedules to constitute prima facie evidence of the validity and amount of claims in chapter 9 and chapter 11 cases. Fed. R. Bankr. P. 3003. Because the rule does not apply to chapter 7 cases, the Drew court had serious questions as to whether a chapter 7 trustee, knowing little about the validity of the claims, could assert that the schedules were prima facie evidence of the validity of the claim. In re Drew, 256 B.R. at 805.

Several policy reasons exist for preventing a trustee from filing claims directly from a debtor's schedules after creditors have declined to file claims. First, there is a question as to who "owns" the debt being represented on a trustee's claim due to the frequent transferring and chargeoffs of debt. The bad debt market has grown rapidly over the past several years. Jane Adler, Making the Most from Bad Debt, 18 Credit Card Management 52, 53 (2005). Selling chargeoffs has become a standard practice for credit card companies and debt sales are frequently part of the recovery strategies of these companies. Id. at 52. Bad debt sales in 2004 topped $80 billion and about two-thirds of the debt sold was credit card chargeoffs. Id. at 53. Because of the rapid transfer rate of claims, it is probable that some funds distributed from trustee filed claims are going to creditors that have already transferred the debt in question.

The problem of debt ownership can also be demonstrated by chapter 13 mortgage experience. As one author notes "complexity and error have become features of mortgage servicing in general." Gordon Bermant & Jean Braucher, Making Post-Petition Mortgage Payments Inside Chapter 13 Plans: Facts, Law and Policy, 80 Am. Bankr. L.J. 261, 264 (2006). In the chapter 13 context, mortgage issues are particularly prevalent. One court opines that because mortgages are "packaged and sold, and then resold, and then resold again" the recordkeeping of mortgage holders and servicing agents has significantly declined. In re Perez, 339 B.R. 385, 391 (Bankr. S.D. Texas 2006). In the court's experience, there have been multiple instances in which it has been impossible to determine who owned the mortgage and what the balance was. This is on secured debts in which the degree of collectability, and hence the creditors' interest and activity, is far higher than the general unsecured debts in the present case.

3

Further, claims based solely on a debtor's schedules ignore the nuances and limitations imposed by state law. It matters under which state law a debt is collected. For example, the law on deficiency judgments varies from state to state. While in Oregon deficiency judgments are permitted only in certain instances (e.g., not permitted after foreclosure on a purchase money mortgage but permitted if there is a judgment stemming from judicial foreclosure of non-residential deeds of trust), California has a detailed deficiency judgment scheme that is based upon the remedy pursued by the creditor and is affected by four separate sections of the California Code of Civil Procedure. Joseph E. Gotch, Jr. Creditors' vs. Debtors' Rights Under Alaska Foreclosure Law: Which Way Does the Balance Swing, 14 Alaska L. Rev. 77, 87 + 90 (1997); John H. Shadduck, Comment, Application of California's Antideficiency Statutes in Conflict of Laws Contexts, 73 Calif. L. Rev. 1332, 1333 (1985). Simply adopting the amount listed in the schedules as the correct amount for the proof of claim may not comport with the state law limitations.

## CONCLUSION

In this case, the claims filed by Trustee do not appear to contain a threat of nondischargeability. The filing of claims by Trustee based solely upon the schedules does not comport with the intent of section 501 and numerous policy reasons exist for preventing a trustee from filing claims directly from a debtor's schedules after the creditors have declined to file claims. In the absence of something more than what has currently been provided, the proofs of claim filed by Trustee are not valid. Accordingly, if a request for hearing or further supporting documentation for the proofs of claims is not filed by April 12, 2007, the claims will be deemed invalid.

/s/ Russ Kendig

**Judge Russ Kendig**
**U.S. Bankruptcy Judge**

MAR 1 5 2007

4

## Service List

John & Sharon McLaughlin
1385 Winners Circle South
Mansfield, OH 44906

Anthony DeGirolamo
Courtyard Centre, Suite 625
116 Cleveland Ave., N.W.
Canton, OH 44702

Edward Corley
3 N. Main Street
#714
Mansfield, OH 44902

United States Trustee
Howard Metzenbaum Courthouse
201 Superior Ave.
Cleveland, OH 44114